**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN L. STANN,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **OLANDER PROPERTY MANAGEMENT** | : | |
| **CO. INC. et al.,** | : | **No. 11-7865** |
| *Defendants.* | : | |

PRATTER, J.                                                                                    JULY 24, 2015

### MEMORANDUM

On December 5, 2011, Susan L. Stann commenced this action against her mother Sara J. Stann and brother Christopher L. Stann (collectively, the "Individual Defendants"), as well as Lander, Inc. and Olander Property Management Co. Inc. (collectively, the "Corporate Defendants") in the Court of Common Pleas of Philadelphia County. Susan Stann generally claims that the her mother and brother lied to her for more than 20 years by representing to her that she did not own a share of the family business(es) (hereinafter the "Stann Family Business") when, in fact, she did own a share of the Stann Family Business.

Defendants removed this action to federal court three and a half years ago. Now, after the Court granted in part and denied in part Defendants' Motion to Dismiss and following the close of discovery, Defendants move for summary judgment on Susan Stann's three remaining claims: (1) fraud, (2) conspiracy to commit fraud, and (3) breach of fiduciary. Defendants argue that Susan Stann's claims are barred by the statute of limitations because she knew or reasonably should have known that she owned a share of the Stann Family Business as early as 2004 and in no case later than 2008, when the applicable limitations period extends back only to December 5, 2009, making her December 2011 commencement of suit untimely.

1

I.     FACTUAL BACKGROUND

The material evidence in the record before the Court on Defendants' motion consists of

four letters written by or on behalf of Plaintiff between 2004 and 2008 and Plaintiff's affidavits

dated July 6, 2015 and July 20, 2015.[1] The Court will summarize each of these pieces of

evidence.

In a letter from Susan Stann to Sara Stann dated March 10, 2004, Susan Stann wrote, "A

short time ago . . . Chris[topher Stann] mentioned that we 'had to discuss some business.' He

informed me that his impending marriage made it imperative that we discuss my share of the

company." (Def.'s Ex. A-1 at DEFSPROD 113). Susan Stann also wrote that when she "asked

for details about [her] share," Mr. Stann "became abusive" and "reiterated that he had to buy

[her] share." *Id.* Susan Stann responded "that perhaps [she] would buy his share." *Id.* "With [Mr.

Stann] being unwilling to provide details about [her] 'share' of the company," Susan Stann then

demanded that her mother, Sara Stann, "forward details of any other 'share' or interest in a

corporation(s) [sic], Trust or other entity, or any other legal or financial interest of any kind." *Id.*

In a letter to Sara Stann dated March 23, 2006, Theona Stefanis, an attorney consulting

with Susan Stann in connection with the family dispute, wrote that "[Susan Stann's] brother,

---

[1] Although Susan Stann has presented the Court with numerous other documents, all but
one date back to before 2008 and none of them are material to the statute of limitations issue.
Additionally, although the Court may consider Plaintiff's verified Second and Third Amended
Complaints, as well as Plaintiff's affidavits attached thereto, it will disregard those documents to
the extent they contain averments that are not based on Plaintiff's personal knowledge. *See* Fed.
R. Civ. P. 56(e) (requiring that sworn statements opposing summary judgment motions must "be
made on personal knowledge"); *Lowe v. Phila. Newspapers, Inc.*, 594 F. Supp. 123, 126 (E.D.
Pa. 1984) (concluding that sworn statements based "on information and belief" are inadequate
and must be disregarded); *Keating v. Bucks Cnty. Water & Sewer Auth.*, No. 99-1584, 2000 WL
1888770, at *4 (E.D. Pa. Dec. 29, 2000) (concluding that where, as here, a sworn statement
generally affirms that it contains assertions that are true and correct based on the knowledge,
information and belief of the affiant, the Court will treat as evidence all statements contained
therein that appear to be based on personal knowledge, but disregard all averments based on
mere belief).

Christopher Stann, contacted [Susan Stann] asking if he could purchase her share of the family business. At that time, [Susan Stann] was unaware that she owned a share of the family business." (Def.'s Ex. A-2 at DEFSPROD 12). The letter also included demands, on behalf of Susan Stann, that her father's last wishes be realized. *Id.*

       In an email dated August 13, 2007 from Susan Stann to Sally and Gary Kollberg (Plaintiff's aunt and uncle and Sara Stann's sister and brother-in-law), Susan Stann first asked if certain "negative remarks" by Sara Stann that Mr. Kollberg had previously mentioned consisted of "any slander, threats or ultimatums," and then wrote, "You can tell my mother that now the last straw has been broken. I will now sue her for my legal rights and for all of the wrongs she has committed against me and my family. I have held off for too long with the foolish, naïve hope of reuniting and in an effort to follow God's rules. But I believe that God also wants me to protect my legal rights and the legal rights of my children." (Def.'s Ex. A-3 at DEFSPROD 1466).

       Finally, in a letter dated October 27, 2008 from Susan Stann to Karen K. Mackay, Sara Stann's personal attorney, Susan Stann wrote, "I have recently been informed by a confidant of Sara/Chris Stann that I have a share in the family business . . . ." (Def.'s Ex. A-4 at DEFSPROD 927). Susan Stann asserted, among other things, that the Individual Defendants had "attempted to defraud [her] of [her] legal rights, including depriving resources [her] father wanted [her] to have," and that "it certainly appears that both have violated the law as well as illegally trampled on [her] rights." (*Id.* at DEFSPROD 929).

       Susan Stann admits that Christopher Stann asked to buy her share of the company in 2004, but claims she believed that her brother was "experiencing serious personal problems" and that he did not know "what he was talking about" when he expressed interest in buying her share

of the Stann Family Business. (Pl.'s Ex. A ¶ 8; *see also id.* at ¶ 14 ("Defendant Christopher

Stann made vague mention about buying my interest.")). She further averred that when she asked

her brother for additional information about her share of the Stann Family Business during that

conversation, he directed her to speak with their mother, Sara Stann, and that Sara Stann's

routine response was that the Stann Family Business was her (i.e., Sara Stann's) business to

manage as she pleased. *Id.* at ¶¶ 9, 12. Susan Stann claims she did not learn about the name

Lander, Inc. until about one and a half years prior to initiating this lawsuit, *id.* at ¶ 15, but

Defendants have produced a copy of an envelope from "Airst" addressed to Sara Stann "c/o

Lander Inc. Management" dated December 23, 1997, and a copy of an envelope from "S.L.

Stann, J.D." addressed to "Mrs. Sara Stann, President, O'Lander Management" dated December

6, 2002, (Aff. of Sara J. Stann Exs. 1, 3, ECF No. 73). Susan Stann claims that all of her

correspondence was intended to gather information from the Defendants, not to begin a lawsuit.

(Pl.'s Ex. A ¶ 18). She also asserts that there is valid reason for questioning the authenticity of

the letters produced by Defendants because Defendants "have forged various documents in the

past," *id.* at ¶ 21, and "could have copied my letterhead, typed the letter or copied my signature,"

Pl.'s Surreply Ex. 1 at ¶¶ 2-3.

## II.   LEGAL STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on

which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of

Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under

governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.   DISCUSSION

#### A.   STATUTE OF LIMITATIONS

Defendants argue that Susan Stann's claims are barred by the statute of limitations. Under Pennsylvania law,[2] the statute of limitations "begins to run at the time 'the right to institute and maintain the suit arises.'" *Beauty Time v. VU Skin Sys.*, 118 F.3d 140, 143-44 (3d Cir. 1997) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). Where the statute of limitations is asserted as a defense, the plaintiff bears the burden of proving that she timely filed her action. *See In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996); *Osei-Afriyie by Osei-Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876, 884 (3d Cir. 1991); *McPhilomy v. Lister*, 19 A.2d 143, 144 (Pa. 1941); *Corbett v. Weisband*, 551 A.2d 1059, 1067 (Pa. Super. Ct. 1988). In Pennsylvania, "[t]he defense of statute of limitations is not a technical defense but substantial and meritorious." *Booher v. Olczak*, 797 A.2d 342, 345 (Pa. Super. Ct. 2002) (internal citations omitted). Indeed, "[t]here is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitation." *Id.*

#### 1.   Fraud

The fraud claim is governed by a two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524(7). "[W]hen the underlying events being sued upon sound inherently in fraud or deceit . . . that, without more, will toll the statute of limitations until such time as the fraud has been revealed, or should have been revealed by the exercise of due diligence by the plaintiff." *Wise v. Mortgage Lenders Network USA, Inc.*, 420 F. Supp. 2d 389, 395-96 (E.D. Pa. 2006) (quoting

---

[2] Where, as here, a case invokes a federal courts' diversity jurisdiction, that court must generally apply the choice of law of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Under Pennsylvania law, "the law of the forum determines the time within which a cause of action shall be commenced." *Unisys Fin. Corp. v. U.S. Vision Inc.*, 630 A.2d 55, 58 (Pa. Super. Ct. 1993); *see also Hamid v. Stock & Grimes, LLP*, 2011 WL 3803792, at *2 (E.D. Pa. Aug. 26, 2011). Therefore, the Court will apply the relevant limitation periods under Pennsylvania law to each of the claims in this lawsuit.

*Gee v. CBS, Inc.*, 471 F. Supp. 600, 622 (E.D. Pa. 1979)). Therefore, because Susan Stann's fraud claim sounds "inherently in fraud or deceit," *Gee*, 471 F. Supp. at 622, the limitations period runs for "two years after the fraudulent act allegedly occurred," *Beauty Time, Inc.*, 118 F.3d at 144, or for two years after "the fraud has been revealed, or should have been revealed by the exercise of due diligence by the plaintiff," *Gee*, 471 F. Supp. at 622, whichever is later. In other words, to prove that her fraud claim was timely filed, Susan Stann must present evidence that she neither knew nor should have known that she owned a share of the Stann Family Business until December 5, 2009 at the earliest (i.e., two years before she filed this lawsuit).

The Court finds that Susan Stann has failed to present such evidence. Indeed, the evidence in this record demonstrates that there is no genuine dispute as to the fact that Susan Stann knew that she owned a share of the Stann Family Business beginning in 2004. In three of the four letters in the record written by or on behalf of Susan Stann between 2004 and 2008, there is an assertion demonstrating that she knew that she owned a share of the Stann Family Business. (*See* Def.'s Ex. A-1 at DEFSPROD 113 (referencing "my share of the company" four times); Def.'s Ex. A-2 at DEFSPROD 12 (stating that Susan Stann was unaware that she owned a share of the Stann Family Business when Christopher Stann asked to purchase it, clearly indicating that she *now knows* she owns a share of the Stann Family Business); Def.'s Ex. A-4 at DEFSPROD 927 ("I have a share in the family business . . . .")). In two of those letters, Susan Stann threatens to pursue legal action (indeed, the very same kind of claim she now has in fact filed) against Defendants. (*See* Def.'s Ex. A-4 at DEFSPROD 929 ("[The Individual Defendants] have attempted to defraud me of my legal rights, including depriving resources my father wanted me to have."); *id.* ("[I]t certainly appears that [the Individual Defendants] have violated the law as well as illegally trampled on my rights." (emphasis omitted)); Def.'s Ex. A-3 ("I will now sue

[Sara Stann] for my legal rights and for all of the wrongs she has committed against me and my family.")). The clear import of this evidence is that before December 5, 2009, Susan Stann knew of her ownership interest in the Stann Family Business and believed that she had a claim against Defendants arising from alleged misrepresentations. As a result, the limitations period began to run before December 5, 2009 and Susan Stann's fraud claim is untimely.

Susan Stann has not presented any evidence to contradict the letters in the record. Counsel for Susan Stann persisted during oral argument, in response to the Court's questions about the language used in the letters, in asserting that what Susan Stann meant by referencing the "company" or "family business" was really her father's Trust. This argument is not credible. Nevertheless, she claims that there are genuine disputes of material fact precluding summary judgment for four reasons. First, she argues that the letters in the record demonstrate that she believed that she was entitled to a share of the Stann Family Trust rather than a share of the Stann Family Business. However, in light of the letters written by and on behalf of Susan Stann from 2004 to 2008, no reasonable jury could adopt such an argument. In the letters, Susan Stann herself repeatedly refers to her share of the "company" or the "family business," and she repeatedly distinguishes between the Trust and the Stann Family Business. It is true that the word "trust" also appears in the letters in the record, but in those same letters, Susan Stann asserts repeatedly that she owns a share of what she refers to as the "company" or the "family business." (*See, e.g.*, Def.'s Ex. A-4 at DEFSPROD 926 (including in the subject line "STANN FAMILY BUSINESS, ANY AND ALL PERSONS, CORPORATIONS, TRUSTS, PARTNERSHIPS OR OTHER ENTITIES USING THE ASSETS OF THE STANN FAMILY TRUST/FAMILY BUSINESS")). At the very least, the letters demonstrate that Susan Stann believed she was entitled to a share of the Stann Family Business; on their face, the letters demonstrate that Susan

Stann believed she was entitled to a share of *both* the Stann Family Trust and the Stann Family Business. Either way, she actually believed she was entitled to a share of the Stann Family Business and the limitations period began to run before December 5, 2009.[3]

Second, although it is undisputed that Christopher Stann contacted his sister in 2004 and asked to buy her share of either the "company," (Def.'s Ex. A-1 at DEFSPROD 113), or the "family business," (Def.'s Ex. A-2 at DEFSPROD 12), Susan Stann argues that she did not know she owned a share of the Stann Family Business because she did not believe that Christopher Stann knew what he was talking about. The letters written by and on behalf of Susan Stann from 2004 to 2008 demonstrate that her assertion is patently false. As a result of Christopher Stann's comment, she repeatedly asserted that she believed she owned a share of the Stann Family Business, and even threatened litigation to vindicate her ownership interest. To the extent she asserts in her affidavit that she lacked knowledge of her ownership interest because she disbelieved Christopher Stann's assertion, the apparent dispute is not genuine and is therefore incapable of defeating a motion for summary judgment.

---

[3] Even if a reasonable jury somehow could find that the letters demonstrate that Susan Stann actually believed that she was entitled to only a share of the Stann Family Trust and *not* a share of the Stann Family Business, the limitations would nevertheless have begun to run no later than 2004 because the evidence in the record demonstrates that she, through the exercise of reasonable diligence, should have known that Christopher Stann had admitted that she owned a share of the Stann Family Business rather than the Stann Family Trust. Susan Stann worked in the Stann Family Business while her father was alive and then again while completing law school. *See* Airst Stann: Susan Airst JD, http://www.airst.com/Management/Susan_Airst/susan_airst.html (last visited July 24, 2015); Susan Stann Dep. 63:12-22; 67:17-68:1. Consequently, in light of her experience and her training as an attorney, Susan Stann should have known that the Stann Family Business was not necessarily the same as the Stann Family Trust, and that her brother's reference to her share of the "company" or "family business" could refer to either the Stann Family Trust or some other entity. (*See, e.g.*, Def.'s Ex. A-4 at DEFSPROD 926 (including in the subject line "STANN FAMILY BUSINESS, ANY AND ALL PERSONS, CORPORATIONS, TRUSTS, PARTNERSHIPS OR OTHER ENTITIES USING THE ASSETS OF THE STANN FAMILY TRUST/FAMILY BUSINESS")). From there, she could or should have investigated the Stann Family Business or filed suit against the Individual Defendants and used a fictitious name for the purportedly unknown name of the Stann Family Business.

Third, although Susan Stann admits that she recognizes the letters written by her and on her behalf from 2004 to 2008, she suggests that the evidence in the record is not authentic because Defendants have allegedly forged other documents in the past. Such "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts*, 621 F.3d at 252; *see also Jackson v. Allstate Ins. Co.*, 441 F. Supp. 2d 728, 734 (E.D. Pa. 2006) ("[B]ald allegations of forgery unsupported by facts of record are insufficient to create issues of material fact."). Apart from her own undisguised distrust of Defendants, Susan Stann has not come forward with any evidence suggesting that the material evidence in the record—the letters written by her and on her behalf from 2004 to 2008—has been altered or is in any way inaccurate. To the extent Susan Stann claims to have evidence that Defendants may have forged other documents, *see, e.g.*, Pl.'s Surreply Ex. 1-H, such evidence cannot prove that Defendants forged the letters in the record before the Court. Therefore, her suspicions create nothing more than "metaphysical doubt" about the evidence in the record and they are incapable of defeating a motion for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Fourth, Susan Stann claims that she did not learn the official names of the Corporate Defendants or the Stann Family Business until one and a half years before she filed this lawsuit. But the evidence in the record before the Court demonstrates that her assertion is patently false. Defendants have produced envelopes that were dated before 2009, apparently addressed by Susan Stann, and mailed to Sara Stann at both "Lander Inc. Management" and "O'Lander Management." (Aff. of Sara J. Stann Exs. 1, 3, ECF No. 73). Moreover, even in the absence of those envelopes, Susan Stann's alleged lack of knowledge would not have prevented her from vindicating her rights. For example, as soon as Susan Stann knew she owned a share of the Stann

Family Business, she could have filed suit against the Individual Defendants and used a fictitious name for the purportedly unknown name of the Stann Family Business. Thus, the fact that Susan Stann claims she was unaware of the official corporate name of the Stann Family Business is immaterial to the statute-of-limitations issue.

> 2.      Conspiracy to Commit Fraud

Under Pennsylvania law, the statute of limitations for a civil conspiracy is determined by "[t]he Pennsylvania statute of limitations pertaining to the substantive offense most closely related to that which the defendants were alleged to have conspired to commit." *Ammlung v. City of Chester*, 494 F.2d 811, 814-15 (3d Cir. 1974). Susan Stann alleges a civil conspiracy to commit fraud, so her civil conspiracy claim is subject to the same two-year statute of limitations that governs her fraud claim. "Under Pennsylvania law, the statute of limitations with respect to a conspiracy begins to run from each overt act causing damage." *Id.*; *see Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984) (noting a split of authority on when the limitations period for civil conspiracy commences begins to run, with some courts concluding that it runs from the commission of the last overt act of the conspiracy, and others concluding that it runs from each overt act causing damage, but ultimately adopting the latter approach); *Rankin v. Smithburger*, No. 12-1373, 2013 WL 3550894, at *16 (W.D. Pa. July 11, 2013) (predicting that the Pennsylvania Supreme Court would adopt the "each overt act causing damage" rule); *Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993) (noting that the "last overt act rule" would improperly "invite attempts to revive time-barred injuries by piggy-backing them onto actions occurring within the relevant period" (quoting *Wells*, 728 F.2d at 217)).[4] Thus, civil conspiracy

---

[4] Defendants argue that the statute of limitations for the conspiracy claim began to run at the same time as the fraud claim because "[t]he statute of limitations for civil conspiracy is determined by the unlawful act that the defendant allegedly conspired to commit." *Segal v. Zieleniec*, No. 13-7493, 2015 WL 1344769, at *3 n.16 (E.D. Pa. Mar. 24, 2015). But the Court's

claims are barred to the extent that they seek relief for injurious acts that occurred outside the limitations period, and civil conspiracy claims are permitted to the extent that they seek relief for injurious acts during the limitations period. *See Rankin*, 2013 WL 3550894, at *16.

For the same reasons that the Court finds that Susan Stann's fraud claim is barred by the statute of limitations, the Court finds that her claim for conspiracy to commit fraud is barred by the statute of limitations. Susan Stann alleges that the Defendants conspired to defraud her by concealing from her the fact that she owned a share of the Stann Family Business. But the evidence in the record demonstrates that by no later than 2008, Susan Stann knew, or through the exercise of reasonable diligence should have known, that she owned a share of the Stann Family Business. She presented to the Court no evidence that Defendants made any overt act causing injury after December 5, 2009. Thus, because Susan Stann has failed to present any evidence showing that her civil conspiracy claim is timely, it will be barred by the statute of limitations.

### 3.    Breach of Fiduciary Duty

Susan Stann's claim for breach of fiduciary duty is governed by a two-year statute of limitations. *See Maillie v. Greater Del. Valley Health Care*, 628 A.2d 528, 532 (Pa. Commw. Ct. 1993). The limitations period begins to run "when the alleged breach of duty occurs." *Edwards v. Duane, Morris & Heckscher, LLP*, No. 01-4798, 2002 WL 32348269, at *5 (E.D. Pa. Aug. 15, 2002) (quoting *Garcia v. Community Legal Servs. Corp.*, 524 A.2d 980, 986 (Pa. Super. Ct. 1987)).

The Court finds that Susan Stann's claim for breach of fiduciary duty is barred by the statute of limitations. She claims that the Individual Defendants owed her fiduciary duties, but

---

statement in *Segal* stands for the proposition that the length of the limitations period for a civil conspiracy claim is the same as that for the unlawful act that was the object of the conspiracy. It does *not* mean that claims of civil conspiracy are necessarily untimely if the statute of limitations has run on the unlawful act that was the object of the conspiracy.

breached those duties by misrepresenting to her that she did not own a share of the Stann Family Business.[5] But no later than 2008—and perhaps as early as 2004—Susan Stann actually knew that she owned a share of the Stann Family Business. Moreover, she has not presented any evidence showing that the Individual Defendants breached any fiduciary duties after December 5, 2009. For example, even though Susan Stann asserts in an affidavit that "even during the pendency of this lawsuit," (Pl.'s Surreply Ex. 1 at ¶ 20), there is no evidence to suggest that Defendants have in fact *held* any such meetings within the limitations period. Susan Stann has

---

[5] Susan Stann also claims that the Individual Defendants owed fiduciary duties to her in her capacity as a minority shareholder and breached their fiduciary duties by (1) mismanaging the assets of the Stann Family Business, and (2) using the assets of the Stann Family Business improperly for their own personal gain. (*See, e.g.*, Pl.'s 2d Am. Compl. ¶¶ 4, 55 & Ex. R). In this regard, and even assuming that Susan Stann's assertions are based on personal knowledge, which is by no means certain, the allegations sound more in tune with claims on behalf of the Stann Family Business.

Under Illinois law, which provides the rule of decision for Susan Stann's claim for breach of fiduciary duty, *see Winer Family Trust v. Queen*, 503 F.3d 319, 338 (3d Cir. 2007) ("[T]he applicable law governing the liability of officers and directors for their stewardship of the corporation i[s] the law of the jurisdiction of incorporation."), "a shareholder seeking relief for an injury to the corporation, rather than a direct injury to the shareholder himself, must bring his suit derivatively on behalf of the corporation," *Small v. Sussman*, 713 N.E.2d 1216, 1219 (Ill. App. Ct. 1999). "In a derivative suit, an individual shareholder seeks to enforce a right that belongs to the corporation." *In re Abbot Laboratories Derivative Shareholders Litig.*, 325 F.3d 795, 803 (7th Cir. 2003) (applying Illinois law). "A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, according, that the shareholder, experiencing no direct harm, possesses no primary right to sue." *Mann v. Kemper fin. Cos., Inc.*, 618 N.E. 2d 317, 324 (Ill. App. Ct. 1992).

Derivative actions differ from direct actions in several notable ways. For example, "any judgment obtained runs in favor of the corporation, not the individuals bringing the derivative suit." *Davis v. Dyson*, 900 N.E.2d 676, 707-08 (Ill. App. Ct. 2008). Additionally, plaintiffs in derivative actions must generally make a pre-suit demand of the corporation's board of directors, unless the demand is excused because the request would be futile. *See Valiquet v. First Fed. Sav. & Loan Ass'n of Chicago*, 408 N.E.2d 921, 925 (Ill. App. Ct. 1979).

At oral argument on the pending motion, the parties agreed that Plaintiff's claim for breach of fiduciary duty is *not* a derivative claim. Thus, the Court will consider only the direct claim for breach of fiduciary duty arising from the Individual Defendants' alleged misrepresentations regarding Plaintiff's ownership stake in the Stann Family Business.

failed to present any evidence showing that her claim for breach of fiduciary duty is timely, so it will be barred by the statute of limitations.

### B.    TOLLING UNDER THE DISCOVERY RULE AND FRAUDULENT CONCEALMENT

Susan Stann argues in the alternative that her claims should be treated as timely filed because they are subject to equitable tolling under Pennsylvania's discovery rule and/or Pennsylvania's doctrine of fraudulent concealment. A plaintiff bears the burden of proving that her claims are subject to equitable tolling. *See Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005); *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997).

Pennsylvania's discovery rule provides that the statute of limitations on a personal injury claim will not begin to run until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003) (internal quotation marks and citation omitted). "Every plaintiff has a duty to exercise 'reasonable diligence' in ascertaining the existence of the injury and its cause." *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991). "The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." *Dalrymple*, 701 A.2d 167. "The question whether a plaintiff has exercised reasonable diligence is usually a jury question." *Bohus*, 950 F.2d at 925 (citing *Taylor v. Tukanowicz*, 435 A.2d 181 (Pa. Super. Ct. 1981)). The standard for the discovery rule is extremely similar to the standard for determining when the limitations period begins to run on a fraud claim. *See Wise*, 420 F. Supp. 2d at 395-96.

The doctrine of fraudulent concealment tolls the statute of limitations when "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Ciccarelli v. Carey Can. Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985). There

must be an affirmative and independent act of concealment for this doctrine to apply. *See Gee v. CBS, Inc.*, 471 F. Supp. 600, 623 (E.D. Pa. 1979). "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception." *Fine*, 870 A.2d at 860. As with the discovery doctrine, the doctrine of fraudulent concealment tolls the statute of limitations until the plaintiff "knew or using reasonable diligence should have known of the claim." *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 46 (3d Cir. 1990). The plaintiff bears the burden of proving fraudulent concealment by "clear, precise, and convincing evidence." *Fine*, 870 A.2d at 860.

For the reasons discussed above, *see supra* Part III.A, the Court finds that the evidence in the record clearly demonstrates that by 2008, Susan Stann knew or reasonably should have known of her alleged injuries and their supposed cause. The letters written by Susan Stann and on her behalf between 2004 and 2008 demonstrate that the discovery rule does not apply because she had actual knowledge of her alleged injury (i.e., the alleged refusal to give her the benefit of her share of the Stann Family Business) and its cause (i.e., the Defendants' alleged misrepresentations regarding her share of the Stann Family Business) before December 5, 2009. Additionally, a reasonable jury could not find by "clear, precise, and convincing evidence," *Fine*, 870 A.2d at 860, that any affirmative and independent act of concealment caused her to relax her vigilance or deviate from her right of inquiry. Indeed, the fact that Susan Stann continued to write letters requesting information about her share of the Stann Family Business and threatening litigation to secure the benefit of her ownership interest demonstrates that she did *not* relax her vigilance and did *not* deviate from her right of inquiry. Susan Stann herself defeats her efforts to pursue these claims.

**IV.    CONCLUSION**

Based on the record before the Court on summary judgment, there is no evidence from which a reasonable jury could find that any of Susan Stann's claims were timely filed or otherwise subject to equitable tolling under the discovery rule or the doctrine of fraudulent concealment. Therefore, the Court will grant summary judgment in favor of Defendants.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge